___ Priority
X Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT
OCT 11 2000
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MATTEL, INC., a Delaware corporation, | ) ) ) | CV 99-8543 RSWL |
| Plaintiff, | ) ) | ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT; MOTION FOR PRELIMINARY INJUNCTION; AND RELATED REQUESTS FOR RELIEF |
| v. | ) ) ) | |
| WALKING MOUNTAIN PRODUCTIONS, et al., | ) ) ) | |
| Defendants. | ) | |

Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and Plaintiff's Motion for Preliminary Injunction came on for hearing on September 25, 2000 at 9:00 a.m. Adrian Pruetz of Quinn Emanuel Urquhart Oliver & Hedges, LLP appeared on behalf of Plaintiff Mattel, Inc. and Annette Hurst of Howard, Rice, Nemerovski, Canady, Falk & Rabkin, P.C. appeared on behalf of Defendant Thomas Forsythe. The Court has thoroughly reviewed all of the papers filed in connection with the two motions, including the ancillary requests to

ENTER ON ICMS
OCT 12 2000

1

strike and for sanctions, and the evidentiary objections filed by both parties, and the Court hereby makes the following orders.

1. Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. The Motion is GRANTED as to Plaintiff's Eleventh Cause of Action for federal trade libel. The Court is not convinced that Plaintiff could amend its Second Amended Complaint to state a claim for federal trade libel, therefore, the claim is dismissed WITH PREJUDICE. Defendant's Motion to Dismiss is DENIED in all other respects. The Court finds that Plaintiff has stated claims for copyright infringement, trademark infringement and dilution, trade dress, common law misappropriation, and restitution.

2. Plaintiff's request for sanctions in connection with Defendant's Motion to Dismiss is DENIED.

3. Defendant's request to strike references to "threats of violence" in Plaintiff's Opposition is DENIED. The Court disregarded Plaintiff's references to Defendant's alleged "threats of violence" in considering the merits of both Motions.

4. Plaintiff's Motion for Preliminary Injunction is DENIED. Plaintiff has not demonstrated either a likelihood of success on the merits and the possibility of irreparable injury, or that there are serious questions regarding the merits of the action and the balance of hardships tips sharply in Plaintiff's favor.

5. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure and Local Civil Rule 14.3 of the United States District Court for the Central District of California, the Court hereby makes

the following findings of fact and conclusions of law in connection with its denial of Plaintiff's Motion for Preliminary Injunction.

FINDINGS OF FACT

6. Mattel, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. Mattel sells toys. Since it first began selling Barbie dolls in 1959, Mattel has sold more than one billion dolls in its Barbie line.

7. Mattel sells hundreds of different models of Barbie dolls each year. The main line of Mattel's Barbie dolls is targeted to girls ages three to eight years old. The dolls are primarily sold through mass-market retailers such as Wal-Mart, K-Mart, and Target, mass-market toy stores such as Toys-R-Us, and specialty toy stores. Mattel advertises its Barbie dolls on children's television programs. Mattel also sells a collector's line of dolls targeted to adult women. Mattel's market research indicates that the purchasers of such dolls are sophisticated women with a high level of education.

8. Mattel's Barbie doll has become the subject of considerable academic and popular commentary, including a number of scholarly books and many articles. The Barbie doll developed into one of the most potent icons of American popular culture in the late twentieth century, and is frequently the subject of parody. The Barbie doll is alternatively viewed as a symbol for eating disorders, class inequality, gender conventions, racial stereotypes, beauty and glamour, childhood, celebrity, international consumer capitalism, and sex.

9. Thomas Forsythe, doing business as Walking Mountain Productions, is a former journalist, political activist, and artist residing in Kanab, Utah. In 1997, Forsythe created a series of artistic photographs entitled "Food Chain Barbie." The individual photographs in the "Food Chain Barbie" series have a range of titles associated with them. Some of the titles include the word "Barbie," such as "Malted Barbie," "Stir-Fry Barbie," "Nature Barbie," or "Barbies on the Half Shell." Other titles do not include the word "Barbie," such as "Five Moon Salute," "Sunbeams," "Petard," "Heat Wave," "Blender Buddies," or "Happy Hour." Where Forsythe has used the word "Barbie" in the title of a photograph, there appears to be a direct descriptive relationship between the imagery and the title.

10. The photographs are provocative, and in some instances, amusing or jarring. The photographs depict unclothed dolls in a variety of poses, a variety of settings, and many include a variety of instruments. Among the instruments depicted with the Barbie dolls are vintage kitchen appliances, steak knives, alcoholic beverage glasses, and other items. Some of the photographs depict the dolls against a plain background, others include carefully staged settings.

11. Forsythe began displaying the framed photographs in his "Food Chain Barbie" series in art galleries and at art fairs in September 1997. Forsythe's art was selected for exhibition at the Barret House Galleries by Lisa Dennison, Deputy Director and Chief Curator of the Guggenheim Museum of Modern Art in New York. Forsythe's work was also selected for exhibition by other art experts

and curators, and was the subject of some newspaper articles.

12. Forsythe offered his photographs for sale in two series. He first offered a limited edition of twenty each at a price of $400 for framed prints or $350 for unframed prints. Forsythe later offered a different series of ten photographs in larger editions of 450 at a price of $50 each.

13. In 1998 and 1999, Forsythe used postcards depicting the photograph, "Barbie Enchiladas," as promotional giveaways at art galleries and fairs where he displayed his photographs. Forsythe later sold approximately 200 of the postcards. The last sale of postcards occurred in August 1999.

14. Forsythe used business cards that depict one of his photographs, "Champagne Barbie." "Champagne Barbie" depicts a naked Barbie doll straddling a champagne glass in a sexually suggestive pose. Forsythe's business card included his name and the title, "Artsurdist," along with contact information. The business card does not feature the word "Barbie."

15. In or around September 1998, Forsythe caused to be published on his behalf a web site located at www.artgods.com/forsythe. The web site included information about Forsythe, and the photographs in his "Food Chain Barbie" series. Forsythe offered his prints for sale on the web site.

16. Forsythe has earned approximately $3,534 in connection with his "Food Chain Barbie" series and has spent at least $5,087.89 in association with the creation and display of his photographs.

17. Forsythe's audience for his photographic works is an adult, sophisticated audience.

CONCLUSIONS OF LAW

18. "To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." Big Country Foods, Inc. v. Board of Education, 868 F.2d 1085, 1088 (9th Cir. 1989). "These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury." Id. (citations omitted).

19. "To establish copyright infringement, the holder of the copyright must prove both valid ownership of the copyright and infringement of that copyright by the alleged infringer." Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217 (9th Cir. 1997). Once the plaintiff establishes ownership of a valid copyright, "the plaintiff must then establish infringement by showing both access to the copyrighted material on the part of the alleged infringer and substantial similarity between the copyrighted work and the alleged infringing work." Id.

20. Mattel has not demonstrated a likelihood of success on the merits of its copyright infringement claim because Forsythe is likely

to establish the affirmative defense of fair use. Fair use is a complete defense to a claim of infringement. 17 U.S.C. § 107. "[P]arody, like other comment or criticism, may claim fair use." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994). Parody targets and pokes fun at the copyrighted work. Mattel, Inc. v. MCA Records, Inc., 28 F. Supp. 2d 1120, 1140 (C.D. Cal. 1998). Forsythe's artistic photographs may properly be characterized as parodies of the Barbie doll.

21. Mattel has not demonstrated a likelihood of success on its trademark and trade dress dilution claims. Mattel must establish that Forsythe is making commercial use of Mattel's mark or trade dress in commerce as part of its claims under the Federal Trademark Dilution Act. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998). In light of the Court's finding that Forsythe's artistic photographs are a parody of the Barbie doll, the Court finds that Forsythe is not making commercial use of Mattel's mark or trade dress. See MCA Records, Inc., 28 F. Supp. 2d at 1155 ("[P]arody is a form of noncommercial, protected speech . . . .").

22. To establish an infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, Mattel must establish that it has valid and protectible marks (the term "marks" is used herein to include trade dress) and that Forsythe used such marks in a manner likely to cause confusion among the consuming public. Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 & n.8 (9th Cir. 1999).

Mattel has not demonstrated a likelihood of success on its infringement claims because there is little possibility of confusion among consumers as to the source of Forsythe's photographs. The Court further finds that with respect to Mattel's trademark infringement claim, Forsythe is likely to prove facts enabling him to use the limited fair use defense recognized by the Ninth Circuit. See New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302 (9th Cir. 1992).

23. Mattel has not shown that it will suffer irreparable injury. The fact that consumers find Forsythe's photographs offensive is not a legally cognizable harm suffered by Mattel. To hold otherwise would mean that there could never be negative parody. Furthermore, there is no evidence that consumers have actually been confused as to the photographs' source or sponsorship. Finally, Mattel has not produced sufficient evidence to prove that Forsythe's photographs "displace a segment of Mattel's licensing market." In light of the fact that Mattel delayed a significant period of time in bringing this Motion, the Court finds that Mattel has not made the requisite showing of irreparable injury.

24. The Court also concludes that Mattel has not demonstrated that the balance of hardships tips sharply in its favor. The evidence before the Court does not support Mattel's claim that Forsythe's art has harmed, or is likely to injure, Mattel's Barbie-related products. On the other hand, Mattel is seeking an extraordinary remedy that implicates important First Amendment rights of Forsythe and his

audience. In the Court's view, Forsythe's First Amendment rights in producing parody, as well as the rights of the viewers interested in viewing his parody, would be irreparably harmed in this case by a preliminary injunction issued without full consideration of the issues.

25. Accordingly, the Court DENIES Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

*RONALD S. W LEW*
_____
**RONALD S.W. LEW**
United States District Judge

DATED: October 11, 2000

No. CV-99-08543-RSWL [Mattel, Inc. v. Walking Mountain Productions, et al.: Mot. for Prelim. Inj.]

(orders\MattelPI_Order.wpd\t)